IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

TIMOTHY WAYNE KEMP                                    PETITIONER

v.                          No. 5:03-cv-55 DPM

RAY HOBBS, Director
Arkansas Department of Correction                    RESPONDENT

ORDER

Timothy Wayne Kemp is an inmate in the Arkansas Department of
Correction under four death sentences for the 1993 murders of David Wayne
Helton, Richard "Bubba" Falls, Robert "Sonny" Phegley, and Sonny's
daughter Cheryl Phegley. Kemp petitions this Court for a writ of habeas
corpus.

1. Factual History. In October 1993, Tim Kemp and his girlfriend Becky
Mahoney had been living together for about eight years. The couple spent
most of the day on October 4th drinking beer and riding around in Kemp's
truck. Around dark, they stopped to visit Wayne Helton and Sonny and
Cheryl Phegley at Helton's trailer in Jacksonville. Bubba Falls was also at the

trailer, but Tim and Becky had never met him before.  The six folks danced and drank beer while Sonny picked the guitar.  After a couple of hours, Kemp got upset with Becky and asked her to leave with him.  Scared of Kemp's temper, Becky refused.  Cheryl stepped in and told Kemp two or three times to leave.  He did.

Becky got upset and asked Cheryl to take her home.  She was afraid Kemp would return, and she didn't want to cause any trouble there at the trailer.  Before Cheryl and Becky could leave, though, someone knocked at the door.  Becky had a feeling that it was Kemp coming back for her, so the other folks told her to go to one of the bedrooms at the back of the trailer.  They planned to tell Kemp that Becky had already left on foot.

As she headed back toward the bedrooms, Becky stopped in the hallway.  When the front door opened, there were gunshots.  Becky saw Bubba and Cheryl fall to the ground and heard Cheryl screaming.  Becky ran to the back bedroom and hid in the closet.  She stayed hidden until the shooting stopped.  When she emerged, she saw bodies on the floor and dialed 911.  While she was on the phone, she heard Kemp's truck start up outside.

Officers arrived and found the bodies of the four victims. Wayne and Sonny had been shot down near the front door. There was a .32 caliber pistol in the floor near Wayne's body. Bubba lay a little further inside along the back wall of the trailer. Cheryl was not in the same area as the three men. She had made it down the hallway and into the first bedroom before being shot to death. All told, the victims had been shot twelve times: Bubba once, Sonny twice, Wayne four times, and Cheryl five times.

Becky gave the officers a description of Kemp and his truck. They found and arrested Kemp at a friend's house in Cabot. The friend, Bill Stuckey, testified that Kemp came over in the early morning hours of October 5th wanting to borrow gas money so he could get out of town. Kemp told Stuckey he had shot Helton, the two Phegleys, and another man he did not know at Helton's trailer. Angry that these folks had run him off, Kemp had gone home, got his gun, gone back to the trailer, and shot the victims. According to Kemp, the stranger he shot "was just in the wrong place at the wrong time."

**2. Procedural History.** Kemp stood trial in Pulaski County Circuit Court in late 1994. He did not contest that he was the one who shot the four

victims that night in October 1993.  Instead, his main argument was that he acted in self-defense: he was heavily intoxicated; and he says that he believed — perhaps recklessly or negligently, and thus imperfectly — that he was being threatened, and that it was necessary to use deadly physical force to protect himself.  The jury rejected this theory, convicting Kemp on all four counts of capital murder.  In sentencing him to death for each count, the jury found two aggravating circumstances:  (1) the murders were committed for the purpose of avoiding arrest; and (2) in committing each murder, Kemp knowingly created a great risk of death to someone other than the victim.

On direct appeal, the Arkansas Supreme Court affirmed all four of Kemp's convictions and affirmed the death sentence imposed for killing Bubba Falls.  The Court found that Kemp's statement about Bubba being in the wrong place at the wrong time was sufficient to support the avoiding-arrest aggravating circumstance.  As to the other three victims, however, the Court held that no rational trier of fact could have found that circumstance beyond a reasonable doubt.  The Court therefore reversed the remaining three death sentences and remanded for resentencing on those counts.  *Kemp v. State (Kemp I)*, 324 Ark. 178, 919 S.W.2d 943 (1996).

-4-

At the resentencing proceedings in 1997, the State relied solely on the great-risk-of-death aggravating circumstance. A jury again imposed three death sentences for the killings of Wayne Helton, Sonny Phegley, and Cheryl Phegley. The Arkansas Supreme Court affirmed those death sentences on direct appeal after the resentencing. *Kemp v. State (Kemp II)*, 335 Ark. 139, 983 S.W.2d 383 (1998).

Kemp then sought post-conviction relief under Rule 37.5 of the Arkansas Rules of Criminal Procedure. The Pulaski County Circuit Court denied Kemp's Rule 37 petition; and the Arkansas Supreme Court affirmed that denial on appeal. *Kemp v. State (Kemp III)*, 348 Ark. 750, 74 S.W.3d 224 (2002).

After his post-conviction proceedings, Kemp filed a petition for writ of habeas corpus in this Court in February of 2003. This Court later stayed the habeas proceedings so Kemp could return to state court to exhaust his claims. *Document No. 24*. During the stay, Kemp attempted to file a successive Rule 37 petition in Pulaski County Circuit Court. On appeal, however, the Arkansas Supreme Court dismissed the petition for lack of jurisdiction because the mandate from his previous Rule 37 proceeding had not been

recalled. *Kemp v. State*, 2009 Ark. 631, 2009 WL 4876473. When Kemp moved

to recall the mandate, the Court denied the motion without opinion. Kemp

also filed an application to reinvest the circuit court with jurisdiction to

consider a petition for writ of error *coram nobis*. The Arkansas Supreme Court

denied this application without opinion, too.

Having exhausted his state remedies, Kemp filed the amended petition

for a writ of habeas corpus now before this Court. *Document No. 36.* The

petition is timely. 28 U.S.C. § 2244(d)(1) & (d)(2). Kemp raises sixteen claims

for relief:

I.   Kemp was denied the effective assistance of counsel at the guilt phase.

II.  Kemp was denied the effective assistance of a competent mental health expert.

III. The Prosecution's key witness, Becky Mahoney, was not competent to testify.

IV.  Kemp was denied a fair trial by misconduct of the prosecutors during the guilt phase.

V.   Kemp is actually innocent of capital murder.

VI.  Kemp's constitutional rights were violated by the erroneous admission of highly prejudicial evidence that had virtually no probative value.

VII.  The trial court's failure to excuse for cause jurors who were unqualified to serve denied Kemp his right to a fair and impartial jury in violation of his constitutional rights.

VIII. Kemp's death sentences are supported solely by unconstitutionally vague, overbroad, and unworkable aggravating circumstances that lack sufficient evidentiary support.

IX.  Kemp was denied a fair trial by misconduct of the prosecutors during his resentencing.

X.  Kemp's 1997 death sentences are based on inadmissible predictions of his future dangerousness and improper arguments introduced at resentencing in violation of his constitutional rights.

XI.  Trial counsel rendered constitutionally ineffective assistance at the penalty phase of Kemp's 1994 trial.

XII.  Trial counsel rendered constitutionally ineffective assistance at Kemp's resentencing proceeding.

XIII. Arkansas's capital murder and death penalty statutes violate the U.S. Constitution.

XIV. Kemp was denied the effective assistance of counsel as well as conflict-free counsel in state direct appeal proceedings.

XV.  Kemp was deprived of his right to effective assistance of counsel during his first state postconviction proceeding.

XVI. The Court should conduct a cumulative assessment of whether constitutional errors occurred and whether those errors were prejudicial.

3. **Standard of Review.** "In most habeas corpus cases, the ubiquitous specter of procedural default overshadows [the Court's] consideration of alleged constitutional violations." *Krimmel v. Hopkins*, 56 F.3d 873, 875 (8th Cir. 1995). This case is no exception.

To have preserved a claim for relief, Kemp must have properly exhausted his state remedies by fairly presenting the claim to the Arkansas courts and allowing them to rule on it. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). "[A] claim has not been fairly presented to the state courts unless the same factual grounds and legal theories asserted in the prisoner's federal habeas petition have been properly raised in the prisoner's state court proceedings." *Krimmel*, 56 F.3d at 876; *see also McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997). Kemp can lose a claim to procedural default at any level of state-court review: trial, direct appeal, or state post-conviction proceedings. *Kilmartin v. Kemna*, 253 F.3d 1087, 1088 (8th Cir. 2001).

Once a claim is defaulted, this Court can consider it only if Kemp can show either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice. *Sawyer v. Whitley*, 505 U.S. 333,

338–39 (1992).  "[T]he cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (internal quotations and citations omitted). Examples of cause include constitutionally ineffective assistance of counsel, an unavailable factual or legal basis for a claim, or interference by state officials that made complying with the exhaustion requirements impracticable. *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986). Kemp must also show "not merely that the errors at trial . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." 477 U.S. at 494 (quotation omitted and emphasis original).

For his claims that the Arkansas courts decided on the merits, Kemp can obtain federal habeas relief only in two limited circumstances. This Court can grant relief only if the state decision "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d).

A decision is contrary to clearly established federal law if the rule the state court applied directly contradicts Supreme Court precedent or if, when faced with "materially indistinguishable" facts, the state court reached a decision that was opposite to the result reached by the Supreme Court. *Kinder v. Bowersox*, 272 F.3d 532, 537–38 (8th Cir. 2001). "As for an unreasonable application of the law, we must remember that unreasonable is not the same as incorrect." 272 F.3d at 538 (internal quotations and citation omitted). Although a state court's application of federal law might be mistaken in this Court's independent judgment, that does not mean that it is objectively unreasonable. *Ibid.; see also Williams v. Taylor*, 529 U.S. 362, 411–13 (2000). Finally, the state court's factual findings are presumed correct unless Kemp "can rebut the presumption by clear and convincing evidence." *Rousan v. Rouper*, 436 F.3d 951, 956 (8th Cir. 2006).

"[T]he decision tree for habeas review of defaulted claims is intricate and costly[,]" requiring both lawyers and judges "to work through the equivalent of a law school exam every time a defendant tries to escape

-10-

procedural default." John C. Jeffries, Jr., & William J. Stuntz, *Ineffective Assistance and Procedural Default in Federal Habeas Corpus*, 57 U. CHI. L. REV. 679, 690 (1990). Where it is more efficient to do so, therefore, this Court may resolve Kemp's claims on the merits rather than navigating through a procedural-default thicket. The governing statute and precedent support taking the merits route where the default issues are particularly tangled. 28 U.S.C. § 2254(b)(2); *McKinnon v. Lockhart*, 921 F.2d 830, 833 n.7 (8th Cir. 1990) (*per curiam*).

**4. Resolution of Particular Claims and Subclaims.** Before the Court are Kemp's amended petition, the Respondent's response and supplemental response, and Kemp's reply. *Document Nos. 36, 42, 49, & 55.* Some of Kemp's claims may require further development. Others, however, can be resolved on the current papers, allowing the lawyers and the Court to focus their efforts as the case moves forward.[1]

---

[1]Pursuant to Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the Court has reviewed the answer and the records of state-court proceedings. None of the claims addressed from here to the end of this Order meet the statutory requirements for an evidentiary hearing. 28 U.S.C. § 2254(e)(2).

A.     **Claim I, Subpart H - Kemp was denied the effective assistance
of counsel at the guilt phase because his counsel failed to secure
an imperfect-self-defense instruction.**

Kemp's ineffective-assistance claim (Claim I) comes in many subparts.
And the subparts have parts. In Claim I.H, for example, Kemp argues that
trial counsel "unreasonably and prejudicially failed to advance the
meritorious legal and factual bases for an instruction on imperfect self-
defense[.]" *Document No. 36, at 29*. This argument has two parts, one legal
and one factual. On the facts, Kemp argues that his trial counsel
unreasonably failed to discover and present the facts that would have created
a rational basis for the instruction. This no-discovery, no-deployment
argument repeats points that Kemp makes in detail in Claim I.D. *Document
No. 36, at 22–25*. The Court therefore carves out and postpones consideration
of the no-discovery, no-deployment argument until the Court takes up Claim
I.D later in the case. Claim I.H, minus the part that duplicates Claim I.D, is
about unmade legal arguments.

Kemp argues that counsel failed to make the proper legal arguments for
the imperfect-self-defense instruction. The Arkansas Supreme Court
addressed a similar claim in Kemp's Rule 37 appeal. *Kemp III*, 348 Ark. at

760–763, 74 S.W.3d at 228–230.  There, Kemp argued that trial counsel was ineffective for failing to correctly cite the Arkansas statute on imperfect self-defense in his proffered jury instruction.  348 Ark. at 760, 74 S.W.3d at 228.

The Arkansas Supreme Court concluded that counsel was not constitutionally ineffective in misstating the law because there was no rational basis in the evidence to support giving the instruction in the first place.  348 Ark. at 761–63, 74 S.W.3d at 229–30.  The Court pointed out that imperfect self-defense does not apply "when one arms himself and goes to a place in anticipation that another will attack him."  348 Ark. at 762, 74 S.W.3d at 230. Because Kemp "left the residence, armed himself with a gun, returned to the residence, and opened fire upon entering the front door[,]" the Court concluded that he could not "rationally argue that he recklessly or negligently formed the belief that the use of deadly force was necessary to protect himself."  348 Ark. at 763, 74 S.W.3d at 230.  Because no rational basis existed for giving the instruction, trial counsel's failure to properly cite the law in the proffered instruction did not prejudice Kemp and therefore was not ineffective assistance.

The Arkansas Supreme Court's holding was not contrary to, or an unreasonable application of, clearly established federal law. Kemp does not argue that it was. Instead, he argues that Claim I.H is "fundamentally altered" from the claim considered in his initial Rule 37 proceeding. *Document No. 55, at 43; see Vasquez v. Hillery,* 474 U.S. 254, 260 (1986). The Court need not determine whether this claim is fundamentally altered because Kemp can't show prejudice.

Under *Strickland v. Washington,* an ineffective-assistance claim has two components: "[f]irst, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." 466 U.S. 668, 687 (1984). The prejudice component requires Kemp to show a reasonable probability that, absent counsel's errors, the outcome of the proceeding would have been different. 466 U.S. at 694.

At trial, Kemp's lawyer argued that not giving the imperfect-self-defense instruction violated Kemp's rights to due process and a fair trial under both the federal and state Constitutions. *App. Tr. I, at 1616.* Kemp argues now that counsel was ineffective for not also contending that refusal

-14-

to give the instruction would violate his right to present a defense under the Sixth and Fourteenth Amendments. *Document No. 36, at 33.*

Kemp's argument fails because the outcome would have been the same. The trial court refused to give the instruction because it was not a mandatory Arkansas Model Criminal instruction. The omitted legal argument would not have changed this fact or the trial court's decision. The Arkansas Supreme Court concluded that the instruction was not warranted because there was no basis in the evidence for it. This is a failure in the facts, not in counsel's work. Again, the proposed legal argument would not have changed the outcome. Claim I.H—allegedly ineffective assistance in terms of legal argument not made—fails for lack of prejudice, and is therefore dismissed. Related Claim I.D, where Kemp tries to fill the factual hole, is reserved for later adjudication.

**B.    Claim VII - The trial court's failure to excuse for cause jurors who were unqualified to serve denied Kemp his right to a fair and impartial jury in violation of his constitutional rights.**

Kemp argues that the trial court unconstitutionally failed to strike certain prospective jurors for cause during both Kemp's trial and his resentencing. *Document No. 36, at 86–111.* As to his trial, Kemp argues that the trial court should have struck eight potential jurors for cause. Kemp

ended up using peremptory strikes on all but one of these. The last was seated after the trial court denied Kemp's for-cause challenge because Kemp was out of peremptory strikes.

The Arkansas Supreme Court rejected this exact argument in *Kemp I*. On the first seven, the Court noted that "[a] claim of error relating to a challenge for cause is only preserved regarding jurors who actually sat on the jury after a challenge for cause was denied." 324 Ark. at 195, 919 S.W.2d at 951. On the final potential juror, Judy Cook, the Arkansas Supreme Court held that "her answers did not render her unfit to serve on the jury." 324 Ark. at 196, 919 S.W.2d at 951.

The Arkansas Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law. A claim that a jury was not impartial must focus on the actual jurors. *Ross v. Oklahoma*, 487 U.S. 81, 86 (1988). Although Kemp had to use peremptory strikes to remove seven of the contested individuals, the Supreme Court has rejected "the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury." 487 U.S. at 88. "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory

-16-

challenge to achieve that result does not mean the Sixth Amendment was violated." 487 U.S. at 88. As to the seven members of the venire who did not sit, the Arkansas Supreme Court reasonably applied federal law. Kemp is not entitled to relief for the trial court's refusal to excuse them.

That leaves one contested juror, Judy Cook. The standard for excluding a person for cause is "whether the juror's views would prevent or substantially impair the performance of [her] duties as a juror in accordance with [her] instructions and [her] oath." *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (quotation omitted). Kemp argues that Cook's "ability to perform her duties was impaired by her articulated belief that the death penalty is warranted if the elements of capital murder are met, without any greater showing." *Document No. 55, at 60–61*.

In light of *Witt*, the Arkansas Supreme Court's decision was not contrary to, or an unreasonable application of, federal law. Yes, Cook first said that she thought that the death penalty would be appropriate in a capital murder trial "if the accused is guilty beyond any doubt[.]" But focusing on this statement alone ignores the fourteen pages of additional voir dire that followed. *Transcript at 1181–96*. On further questioning, it became apparent

-17-

that Cook, like most non-lawyers, was not familiar with Arkansas law about capital murder and the death penalty. When she answered the first question, she did not know that the State could not ask for the death penalty in every capital murder case. Then the prosecutor explained the role of aggravating and mitigating circumstances and the State's burden in a capital case.

After the prosecutor's explanation, Cook's answers revealed a proper understanding of the law: she knew that she could not impose the death penalty just because the defendant was guilty of capital murder; she confirmed that the State would have to put on further proof before death could be imposed; she said twice that she would not automatically impose the death penalty; she confirmed that the crime would have to meet the appropriate circumstances and rules prescribed by law before death could be imposed; and she confirmed that she was not "leaning toward the death penalty" in the case of premeditated murder. *App. Tr. at 1193; compare White v. Mitchell*, 431 F.3d 517, 542 (6th Cir. 2005) ("[The juror's] statements not only indicate that [she] had a strong inclination toward imposing the death penalty, they also indicate that she was looking forward to participating in the imposition of this particular defendant's sentence.").

-18-

The trial court was entitled to conclude, in light of this record, that Cook was fit to serve as a juror. *Witt*, 469 U.S. at 424. And the Arkansas Supreme Court did not unreasonably apply clearly established federal law in upholding this decision. Kemp's claim for relief as to Juror Cook is also denied.

Kemp admits that he defaulted his claim about two prospective jurors at his resentencing by failing to exhaust his peremptory challenges. *Document No. 55, at 60, see also Kemp II*, 335 Ark. at 143, 983 S.W.2d at 385. It is unnecessary to address cause and prejudice, however, because this claim fails on the merits. Kemp used peremptory strikes to exclude both of them. Because neither person actually sat on the resentencing jury, Kemp is not entitled to relief on this part of his claim. *Ross*, 487 U.S. at 86.

The Court dismisses Claim VII of Kemp's amended petition.

**C.    Claim VIII - Kemp's death sentences are supported solely by unconstitutionally vague, overbroad, and unworkable aggravating circumstances that lack evidentiary support.**

Kemp's death sentence for killing Bubba Falls was based on two aggravating circumstances: (1) that Kemp killed Falls for the purpose of avoiding arrest; and (2) that in killing Falls, Kemp knowingly created a great

-19-

risk of a death to a person other than Falls. The death sentences for killing the Phegleys and Wayne Helton are based solely on the great-risk-of-death aggravating circumstance. The Arkansas Supreme Court addressed these aggravating circumstances in Kemp's two direct appeals.

i. **Avoiding Arrest.** Kemp argues that the avoiding-arrest circumstance supporting his death sentence for killing Bubba Falls is "vague, overbroad[,] and unworkable." This claim fails on the merits. The Court of Appeals has addressed and rejected this argument. "The statutory language defining the circumstance is specific enough to guide the jury and avoid arbitrary and capricious imposition of the death penalty." *Wainwright v. Lockhart,* 80 F.3d 1226, 1231 (8th Cir. 1996). The Court therefore rejects Kemp's claim for relief on the avoiding-arrest aggravating circumstance.

ii. **Great Risk of Death.** Kemp's arguments about the great-risk-of-death circumstance also fail on the merits. First, his unsupported unanimity argument goes against Supreme Court precedent about the guilt phase. *Schad v. Arizona*, 501 U.S. 624 (1991). His sufficiency and notice arguments stumble too. In *Cox v. State*, the Arkansas Supreme Court concluded that killing more than one person satisfies the great-risk-of-death

aggravating circumstance.  313 Ark. 184, 196–97, 853 S.W.2d 266, 272–73 (1993).  The evidence is clear and uncontested that Kemp killed all four victims.  His sufficiency argument therefore lacks merit.  *Cox* was decided before Kemp shot Helton, the Phegleys, and Falls.  The decision gave notice. Lastly, Kemp argues that this aggravating circumstance is unconstitutionally vague and overbroad and fails to perform the Eighth Amendment's narrowing function.  But the Court of Appeals has held that this circumstance sufficiently narrows the class of offenders who are eligible for the death penalty in Arkansas.  *Cox v. Norris*, 133 F.3d 565, 571 (8th Cir. 1997).

The Court dismisses Claim VIII of Kemp's amended petition.

### D.    Claim XIII - Arkansas's capital murder and death penalty statutes violate the U.S. Constitution.

Kemp argues that Arkansas's death penalty statutory framework is unconstitutional because it constrains the jury's consideration of mitigating evidence.  *Document No. 36, at 204–206*.  The overlap between capital murder and first-degree murder, he continues, "[makes] the charge of capital murder void for vagueness and capriciousness."  *Document No. 36, at 206*.  These arguments are unsound.  The Court of Appeals has considered and rejected both.  Arkansas's statutory scheme is constitutional.  *See, e.g., Williams v.*

-21-

*Norris*, 576 F.3d 850, 869 (8th Cir. 2009); *Singleton v. Lockhart*, 962 F.2d 1315, 1323 (8th Cir. 1992); *Simpson v. Lockhart*, 942 F.2d 493, 496–97 (8th Cir. 1991). The Court therefore dismisses Claim XIII of Kemp's amended petition.

### E.   Claim XIV - Kemp was denied the effective assistance of counsel as well as conflict-free counsel in state direct-appeal proceedings.

Kemp says his appellate lawyer's representation "was unreasonably and prejudicially deficient in multiple respects." *Document No. 36, at 207.* Here is one of those procedural thickets about default, cause, and prejudice. The Court circles around it to the merits — because this claim is empty. Kemp must show that counsel performed deficiently to Kemp's prejudice. *Strickland*, 466 U.S. at 687; *Scarberry v. State of Iowa*, 430 F.3d 956, 958 (8th Cir. 2005). Kemp hasn't satisfied either element.

He broadly asserts that the Court "may" note counsel's omissions "such as the failure to advance available legal claims, the failure to marshal all available facts in support of legal claims, or the failure to advance all available legal bases for claims that were advanced[.]" *Document No. 36, at 208.* But Kemp has failed to articulate specifically how his lawyer's work fell below

par.  Kemp has not shown any deficient performance in either direct-appeal proceeding, let alone sufficient prejudice.

The Court dismisses Claim XIII of Kemp's amended petition.

**F.    Claim XV - Kemp was deprived of his right to effective assistance of counsel during his first state post-conviction proceeding.**

As a stand-alone claim, this one fails on the merits too.  "There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citations omitted).

The Supreme Court's recent decision in *Martinez v. Ryan* did not change this law.  The Court declined to resolve "whether a prisoner has a right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial."  132 S. Ct. 1309, 1315 (2012). Instead, the Court "qualifie[d] *Coleman* by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  *Ibid.*  And the Court of Appeals held last week that

*Martinez*'s narrow exception does not apply to Arkansas petitioners such as Kemp because Arkansas law allows assertions of ineffective-assistance at trial on direct appeal. *Dansby v. Norris*, No. 10-1990, 2012 WL 2344727, at *15–16 (8th Cir. 21 June 2012).

Claim XV of Kemp's amended petition fails as a matter of law. *Coleman*, 501 U.S. 722. The Court dismisses it.

### G.   Claim XVI - The Court should conduct a cumulative assessment of whether constitutional errors occurred and whether such errors were prejudicial.

Kemp asks this Court to consider the combined prejudicial effect of all the errors he alleges. As he acknowledges in his reply, though, Eighth Circuit precedent holds that "each habeas claim must stand or fall on its own." *Scott v. Jones*, 915 F.2d 1188, 1191 (8th Cir. 1990). In a phrase, no cumulative-error claim exists on federal habeas. The Court therefore dismisses Claim XVI of Kemp's amended petition.

**5. Common Procedural Issues.** Kemp makes three arguments for excusing his procedural default on remaining claims that apply to several of those claims. The Court therefore addresses these common excuse arguments at the threshold.

-24-

• **Successive Rule 37 Petition.** Kemp acknowledges that several of his claims have been presented to the state courts only through his successive Rule 37 Petition in the circuit court and his motion to recall the mandate in the Arkansas Supreme Court. *Document No. 55, at 21.* Rule 37.2(b) of the Arkansas Rules of Criminal Procedure generally prohibits successive post-conviction petitions. But Kemp says the state court erred in failing to recall its mandate because Kemp should have qualified for the "unverified petition exception[.]" *Document No. 55, at 21; see also Wooten v. State,* 2010 Ark. 467, ___ S.W.3d ___, 2010 WL 4909670 (2010); *Collins v. State,* 365 Ark. 411, 231 S.W.3d 717 (2006). Kemp's argument lacks merit. The fact that Arkansas "grants additional layers of protection does not open the door to an additional layer of federal review." *Wooten v. Norris,* 578 F.3d 767, 785 (8th Cir. 2009). The Arkansas Supreme Court's denial of Kemp's motion to recall the mandate therefore "afford[s] no basis for federal relief[.]" 578 F.3d at 786. Arkansas's rule against successive Rule 37 petitions is also an independent and adequate procedural bar. "[Kemp's] inability to have his claim[s] considered by the Arkansas state courts stems from his failure to raise [them] in his first Rule 37 petition, when his procedural default occurred, not from any

-25-

unreasonableness on the part of the state's procedural rules." *Wallace v. Lockhart*, 12 F.3d 823, 826 (8th Cir. 1994). Kemp's successive Rule 37 petition does not lift his procedural defaults on Claims I, II, V, VI, VII, X, XI, XII, XIV, and XV.

• *Coram Nobis* **Petition.** Kemp argues that any procedural default on Claims III, IV, and IX was lifted "because the Arkansas Supreme Court later considered them on the merits." *Document No. 55, at 24*. The Court disagrees. The Arkansas Supreme Court denied Kemp's application for a writ of *coram nobis* without opinion. "The essence of unexplained orders is that they say nothing. . . . [A] presumption which gives them *no* effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play." *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (emphasis original).

Kemp's situation is akin to the circumstance when an unexplained state decision is based on ineligibility for further state review. *Ylst*, 501 U.S. at 804 n.3. The Arkansas Supreme Court's no-opinion denial therefore "neither rests upon procedural default nor lifts a pre-existing procedural default[. I]ts effect

upon the availability of federal habeas is nil—which is precisely the effect accorded by the 'look-through' presumption." *Ibid.*

Parts of Claims IV and IX were decided on the merits. *Kemp I*, 324 Ark. at 197–98, 919 S.W.2d at 952; *Kemp II*, 335 Ark. at 144, 983 S.W.2d at 385–86. As to those parts, Kemp's claims are preserved. The remainder (all of Claim III and parts of Claims IV and IX) are procedurally defaulted.

- **Ineffective Assistance as Cause Excusing Procedural Default.**
Kemp argues that ineffective assistance of counsel at trial, on direct appeal, and during his post-conviction proceedings constitutes cause sufficient to excuse the procedural default that applies to many of his claims. But an ineffective-assistance claim must generally "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray*, 477 U.S. at 489. Kemp made no such presentation. So he cannot use his ineffective-assistance arguments to show cause generally. The *Martinez* exception, the Court of Appeals recently instructed, does not apply to Arkansas petitioners such as Kemp. *Dansby*, 2012 WL 234472, at *15–16. Instead, circuit precedent such as *Wooten v. Norris*, 578 F.3d 767, 778 (8th Cir. 2009), still controls. In sum, Kemp's defaulted

ineffective-assistance claims are not cause that might excuse his default of other claims, such as Claims II, III, IV, V, VI, IX and X. *Murray*, 477 U.S. at 489.

*  *  *

The Court denies relief on the merits on Claims I.H (reserving the argument also asserted in Claim I.D), VII, VIII, XIII, XIV, XV, and XVI of Kemp's amended petition and dismisses those claims. The Court rejects Kemp's three common arguments — from his successive Rule 37 petition, from his *coram nobis* petition, and from ineffective assistance of counsel — for excusing his procedural defaults on his various remaining claims.

So Ordered.

D.P. Marshall Jr.
United States District Judge

28 June 2012

-28-